# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | |
|---|---|
| **DAVID E. KEITH, III,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **Civil Action No. 3:14-cv-02261** |
| **v.** ) | **Judge Trauger / Knowles** |
| ) | |
| **CAROLYN W. COLVIN,** ) | |
| **Acting Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), to obtain

judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff

was not disabled and denying Plaintiff Disability Insurance Benefits ("DIB") and Supplemental

Security Income ("SSI"), as provided under the Social Security Act ("the Act"), as amended.

The case is currently pending on Plaintiff's Motion for Judgment on the Administrative Record.

Docket No. 14. Defendant has filed a Response, arguing that the decision of the Commissioner

was supported by substantial evidence and should be affirmed. Docket No. 16.

For the reasons stated below, the undersigned recommends that Plaintiff's Motion for

Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner

be AFFIRMED.

## I. INTRODUCTION

Plaintiff filed his applications for DIB and SSI on June 13, 2011, with a protective filing

date of March 15, 2011, alleging that he had been disabled since February 28, 2009, due to a

benign spinal cord tumor.  Docket No. 10, Attachment ("TR"), TR 116-19, 120-26, 140.

Plaintiff's applications were denied both initially (TR 56, 57) and upon reconsideration (TR 58,

59).  Plaintiff subsequently requested (TR 76-77) and received (TR 26-55) a hearing.  Plaintiff's

hearing was conducted on June 19, 2013, by Administrative Law Judge ("ALJ") Renee Andrews-

Turner.  TR 26-55.  Plaintiff and vocational expert ("VE"), Gary Sturgill, appeared and testified.

*Id.*

On August 20, 2013, the ALJ issued a decision unfavorable to Plaintiff, finding that

Plaintiff was not disabled within the meaning of the Social Security Act and Regulations.  TR

10-25.  Specifically, the ALJ made the following findings of fact:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2013.
>
> 2. The claimant has not engaged in substantial gainful activity since February 28, 2009, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. The claimant has the following severe impairment: status post cervical ependymoma, cervical spondylosis and cervical syrinx (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift and/or carry 10 pounds occasionally and less than 10 pounds frequently; stand and walk for 2 hours in an 8-hour workday; sit for 6 hours in an 8-hr [*sic*] workday; occasionally stoop, kneel, crouch,

crawl, balance and climb ramps/stairs; never climb ladders, ropes and scaffolds; frequently push and pull with both lower extremities; should avoid all exposure to hazards; and requires the use of a cane to ambulate.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on January 8, 1973 and was 36 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from February 28, 2009, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

TR 15-20.

On August 30, 2013, Plaintiff timely filed a request for review of the hearing decision.

TR 9. On September 23, 2014, the Appeals Council issued a letter declining to review the case

(TR 1-6), thereby rendering the decision of the ALJ the final decision of the Commissioner.

This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g).

If the Commissioner's findings are supported by substantial evidence, based upon the record as a whole, then these findings are conclusive. *Id.*

## II. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of Record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## III. CONCLUSIONS OF LAW

### A. Standards of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Sec'y, Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991). The purpose of this review is to determine (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion." *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389 (6th Cir. 1999) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Comm'r of Soc. Sec.,* 105 F.3d 244, 245 (6th Cir. 1996) (*citing Consol. Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)).

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*,

745 F.2d 383, 387 (6th Cir. 1984). In fact, even if the evidence could also support a different conclusion, the decision of the Administrative Law Judge must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389 (*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). If the Commissioner did not consider the record as a whole, however, the Commissioner's conclusion is undermined. *Hurst v. Sec'y of Health & Human Servs.*, 753 F.2d 517, 519 (6th Cir. 1985) (*citing Allen v. Califano,* 613 F.2d 139, 145 (6th Cir. 1980)).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnosis and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience. *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965).

## B. Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied. 42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process as follows:

(1)  If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.

(2)  If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.

(3)  If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments[1] or its equivalent.  If a listing is met or equaled, benefits are owing without further inquiry.

(4)  If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations).  By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a *prima facie* case of disability.

(5)  Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

20 C.F.R. §§ 404.1520, 416.920 (footnote added).  *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability

---

[1] The Listing of Impairments is found at 20 C.F.R., Pt. 404, Subpt. P, App. 1.

determination. *Id.* In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's *prima facie* case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments: mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. § 423(d)(2)(B).

### C. Plaintiff's Statement Of Errors

Plaintiff contends that: (1) the ALJ improperly evaluated the medical opinion evidence of record; (2) the ALJ failed to "consider or evaluate" his mental impairment(s); (3) the ALJ failed to "identify, consider, and evaluate" all of his severe impairments; and (4) the ALJ's finding that Plaintiff could perform jobs identified by the VE was not supported by substantial evidence. Docket No. 15. Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be reversed, or in the alternative, remanded. *Id.*

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can

7

be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (6th Cir. 1994).

## 1. Medical Opinion Evidence

Plaintiff first contends that the ALJ improperly evaluated the medical opinion evidence of record. Docket No. 15. Specifically, Plaintiff argues that the ALJ should have accorded greater weight to the opinions of Dr. Yemane Hadgu and Dr. John Matlock, two VA treating physicians. *Id.*, p. 13-16. Plaintiff further argues that the ALJ erroneously accorded great weight to the opinion of state agency consultant, Dr. Evelyn Davis, because Dr. Davis rendered her opinion after a review of the evidence available on January 12, 2012, which did not include the Medical Source Statement ("MSS") from Dr. John Matlock, Plaintiff's treating physician at the VA Spinal Cord Injury Clinic (TR 616-19); hundreds of pages of VA records after October 27, 2011 (TR 638-1153); and Vanderbilt records after July 19, 2011 (TR 628-37). *Id.*, p. 12. Plaintiff also asserts that Dr. Davis' "impression" did not properly consider Plaintiff's "[s]izable disc herniation" at C5-C6 (TR 590, 612), disc bulge at C6-C7, or herniated disc at T8-T9 (TR 612), because it failed to accurately describe what the cervical MRI reflected; because Dr. Davis mistakenly equated strength with stability; and because Dr. Davis improperly equated Plaintiff's ability to engage in minimal activities of daily living with an ability to work on a full-time basis

in a competitive work environment.  *Id.*, p. 13-15.  Plaintiff notes that his "mundane activities necessitated visits to the ER," and he argues that the fact that he "wound up in the ER multiple times after engaging in limited physical activities has far greater significance than the fact that he engaged in physical activities."  *Id.*, p. 16.  Plaintiff contends that the ALJ's decision to accord greater weight to the opinion of a non-treating, non-examining consultant who only reviewed part of the medical evidence than to two of his treating physicians cannot stand.  *Id.*

Defendant responds that the ALJ properly evaluated the evidence of record, including the objective medical records, the opinion evidence, the testimonial evidence, and Plaintiff's subjective complaints and reported daily activities.  Docket No. 16, p. 4- 14, *citing* TR 17-19.  As to the opinion evidence specifically, Defendant contends that the ALJ appropriately discounted an August 2011 letter authored by treating physician Dr. Hadgu that classified Plaintiff as "unemployable," because that opinion was unsupported by, and inconsistent with, the medical evidence of record, including Dr. Hadgu's own treatment notes.  *Id.*, p. 7-8.

Regarding the ALJ's consideration of the opinion of treating physician Dr. Matlock, Defendant asserts that, although Dr. Matlock checked boxes indicating, *inter alia*, that Plaintiff would have difficulty working continuously for eight hours without several intermittent periods of rest; the exertional limitations assessed by Dr. Matlock were roughly consistent with the exertional requirements of sedentary work; the postural limitations assessed by Dr. Matlock were consistent with those contained in the ALJ's RFC determination; and the ALJ did not have to accept Dr. Matlock's opinion that Plaintiff would be unable to complete a normal work day and work week without interruption from his medical impairments, because Plaintiff's impairments had improved with treatment and the ALJ limited Plaintiff to jobs where there was only

occasional walking and where use of a cane was permissible.  *Id.*, p. 10-11.

Addressing the ALJ's consideration of the opinion rendered by state agency medical consultant Dr. Davis, Defendant argues that the ALJ appropriately found that Dr. Davis' opinion that Plaintiff could perform sedentary work with occasional postural activities and frequent use of a cane was generally consistent with the medical record, and properly explained her reasons for so finding.  *Id.*, p. 9.  As to the opinion of state agency medical consultant Dr. Minto, Defendant asserts that Plaintiff's contention with that opinion is a non-issue because the ALJ actually agreed with Plaintiff that Dr. Minto's August 2011 opinion that Plaintiff could perform a range of medium work overstated his functional abilities and the ALJ accorded Dr. Minto's opinion little weight.  *Id.*, p. 11.

Defendant further essentially maintains that Plaintiff's arguments that: (1) a non-examining source's opinion must be granted little weight when contradicted by a treating source's opinion; (2) an ALJ may not decline to grant a treating physician's opinion controlling weight simply because another doctor has reached a contrary conclusion; and (3) an ALJ may not rely on a non-examining source's opinion where the source did not review the entire medical record, are contrary to Social Security Rulings, Sixth Circuit case law, and the facts of this case.  *Id.*, p. 12-13.  Defendant contends that the ALJ considered the record in its entirety, including the records subsequent to the date the medical opinions were rendered, and argues that Plaintiff has failed to establish any error in the ALJ's consideration of the opinion evidence that warrants remand.  *Id.*, p. 13.

With regard to the evaluation of medical evidence, the Code of Federal Regulations states:

Regardless of its source, we will evaluate every medical opinion we receive.  Unless we give a treating source's opinion controlling weight under paragraph (c)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.

(1)  Examining relationship.  Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.

(2) Treatment relationship.  Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.  If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques *and is not inconsistent with the other substantial evidence in your case record*, we will give it controlling weight.  When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. ...

(3) Supportability.  The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion.  The better an explanation a source provides for an opinion, the more weight we will give that opinion. ...

(4) Consistency.  Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.

(5) Specialization.  We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.

20 CFR § 416.927(c) (emphasis added).  *See also* 20 CFR § 404.1527(c).

The ALJ must articulate the reasons underlying his decision to give a medical opinion a

specific amount of weight.[2]  *See, e.g.,* 20 CFR § 404.1527(d); *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646 (6th Cir. 2009); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).  The reasons must be supported by the evidence and must be sufficiently specific so as to make clear to any subsequent reviewers the weight the ALJ gave to the treating source medical opinion and the reasons for that weight.  SSR 96-2p.

The Sixth Circuit has held that, "provided that they are based on sufficient medical data, the medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002), *quoting Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985).  If the ALJ rejects the opinion of a treating source, she is required to articulate some basis for rejecting the opinion.  *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987).  The Code of Federal Regulations defines a "treating source" as:

> [Y]our own physician, psychologist, or other acceptable medical source who provides you or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you.

20 C.F.R. § 404.1502.

The ALJ in the instant action discussed the medical opinions of record, and the weight she accorded thereto, as follows:

---

[2] There are circumstances when an ALJ's failure to articulate good reasons for the weight accorded to medical opinions may constitute harmless error: (1) if a treating source opinion is so patently deficient that the ALJ could not possibly credit it; (2) if the ALJ adopts the opinion or makes findings consistent with the opinion; and/or (3) if the ALJ has complied with the goal of 20 CFR § 1527(d), by analyzing the physician's contradictory opinions or by analyzing other opinions of record.  *See, e.g., Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. April 28, 2010); *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470-72 (6th Cir. 2006); *Hall v. Comm'r of Soc. Sec.*, 148 F. App'x 456, 464 (6th Cir. 2006).

As for the opinion evidence, the undersigned gives great weight to the opinion of State agency medical consultant Dr. Evelyn Davis. Dr. Davis reviewed the evidence and opined that the claimant was capable of sedentary exertional activities with additional exertional, postural, and environmental limitations. Dr. Davis was also of the opinion that the claimant would be more comfortable using a cane for balance. The undersigned finds Dr. Davis' opinion generally consistent with the claimant's history of back surgery, pre-and post-surgical radiology reports of the claimant's cervical and thoracic spine, physical examinations of the claimant that demonstrated some sensory changes on occasion, and the claimant's reported activities of daily living, all of which support his ability for sedentary activities. Dr. Davis' assessment also indicated that the claimant's subjective reports of pain, weakness, and numbness in the extremities appeared somewhat embellished. Dr. Davis pointed out that the claimant's subjective complaints of pain and weakness were inconsistent with his treating physicians' physical findings (Ex. 11F). Thus, the undersigned finds the claimant's allegations of pain is not totally credible because the medical evidence shows the diagnostic findings such as MRI reports do not cause the level of pain that the claimant has alleged. Although overly optimistic in many areas in considering physical examinations of the claimant and the claimant's activities of daily living, as previously discussed above, the undersigned gives some weight to the opinion of the claimant's treating physician Dr. John Matlock (Ex. 13F) in that it supports the contention that the claimant has the capacity for sedentary activities. The undersigned gives little weight to the opinion of the state agency medical consultant because it is overly optimistic in light of the claimant's use of a cane (Ex. 6F). The undersigned gives no weight to the opinion of the claimant's treating physician Dr. Yemane Hadgu because there is no evidence to support the presence of residual effects of loss of balance and motor power in the claimant's lower extremities. While the claimant has complained of balance issues to doctors, there is no evidence that the claimant is unable to ambulate effectively. The claimant has 5/5 muscle strength in the lower extremities and has been consistently thought to be neurologically intact (Ex. 4F). The claimant's deep vein thrombosis resolved with no evidence of recurrent episodes.

TR 18-19.

In making these determinations, that ALJ also considered the medical evidence of record, stating:

The claimant has received most of his medical care at the Department of Veterans Affairs. The claimant was diagnosed with neck pain with myelopathy. An MRI of the claimant's cervical and thoracic spine from February 2011 revealed complex enhancing lesion over cervical and upper thoracic mostly likely [*sic*] representing an ependymoma. The claimant had lumbar spinal surgery for removal of empdymoma on March 21, 2011 (<u>See</u> Ex. 3f). Post-operatively, the claimant was able to ambulate without assistance. He reported that he was doing well overall. Subsequent treatment notes indicate that the claimant had a lengthy rehabilitation, but treatment notes also suggest that the claimant made a full recovery. Vanderbilt University Medical Center records from April 2011 document significant improvement in the claimant's pain and functioning (Ex. 3F, p. 4). The claimant did complain of pain at the surgical site and numbness from the chest down on occasion, but treatment records suggest that the claimant's pain did not seriously limit his activities. For instance, at a June 2011 visit to the emergency room, the claimant complained of back pain and requested blood pressure medications. He told emergency room staff that he was *playing out in the yard yesterday* with his child and that he fell up against a wall causing tremendous pain in and around his surgical area. On examination, the claimant displayed normal curvature and tenderness on palpation. He also displayed impressive grip strengths (Ex. 1F, p. 21). A medical imaging report of the claimant's thoracic spine showed post-surgical changes, but otherwise negative findings (Ex. 1F, pgs. 21-22). At a July 2011 emergency room visit, the claimant said that he *had been swimming over the weekend* (Ex. 8F, p. 61). The claimant was noted to be attending physical therapy with improvement in his parethesias and pain (Ex. 1F, p. 41).

At a July 2011 emergency room visit to Sumner Medical Center, the claimant reported improvement in his pain with conservative pain medications. He told emergency room staff that he responded better to Oxycodone. He was given a prescription for Percocet (Ex. 2F). The claimant had a neurosurgery consultation on July 19, 2013 at Vanderbilt University Medical Center. The claimant complained of some residual numbness in his legs, but he also reported that he was doing well. Treatment notes indicate that the claimant was using a cane to ambulate, but also noted that he had a normal gait. He displayed 5/5 strength in the extremities bilaterally and

in both proximal and distal muscle groups. The claimant had good cervical range of motion. A radiology report of the claimant's spine showed good alignment and hardware placement (Ex. 3F, p. 3). The claimant was thought to be neurologically stable (Ex. 3F, p. 4).

The claimant was seen in the pain clinic at the Department of Veterans Affairs on October 27, 2011, with complaints of upper and middle low back pain and numbness and burning from his chest down. The claimant reported a history of tried and failed conservative measure treatments, but admitted that he was currently on oxycodone and that it was effective. Despite the claimant's allegations of pain and numbness, a neurological examination was essentially normal. The claimant's gait was stable. A sensory examination was unremarkable, except to bilateral lower extremities below the knee. Although the claimant displayed tenderness around the cervical and lumbar spine, and positive straight leg raise tests, he had 5/5 muscle strength throughout (Ex. 8F, pgs. 28-29). An MRI of the claimant's thoracic spine showed a syrinx at C7-T1 (Ex. 8F, pgs. 29 and 34). The claimant was seen in the emergency room on October 17, 2011, with complaints of weakness in the legs and right arm, but the claimant was able to ambulate and his strength was intact on examination (Ex. 8F, p. 38). The claimant had a neurosurgery consultation on October 17, 2011. It was noted that the claimant had a pre-op intraspinal cyst associated with the tumor, which appeared to have decreased in size post-operatively as seen on recent scans. The claimant returned to the neurosurgery clinic at Vanderbilt University Medical Center on February 8, 2012, for his third post-operative visit. The claimant's most recent MRI of the cervical spine showed no enhancement. The claimant reported that he was doing well. A neurologic examination was normal. The claimant had 5/5 strength in the extremities bilaterally and proximal and distal muscle groups. He was noted to have a normal gait (Ex. 16F, pgs. 8-9). The claimant was again thought to be neurologically stable.

. . .

Medical records showed the claimant underwent surgery to remove a tumor from his cervical spine. The claimant did require home health care for approximately three months following the procedure. However, the medical evidence revealed that the claimant's physical health improved significantly. MRI reported

[*sic*] dated August 7, 2011 noted there was no evidence of cervical tumor recurrence. Although there was no tumor recurrence, there was the presence of cervical spondylosis at C5-C6 and C6-C7 with moderate right foraminal stenosis and cervical syrinx (Ex. 17F, pgs. 107 and 112). Also, there was evidence that the claimant experienced some sensory changes at T2-T4 level, but his gait has been stable. The evidence of record revealed the claimant continues to perform activities of daily living with no assistance. The medical records noted the claimant was physically able to play with his child on June 20, 2011 until he fell against a wall (Ex. IF, p. 19). Although the claimant has been observed using a cane on occasion, there is no evidence that the claimant is unable to ambulate effectively (Ex. 17F, pgs. 225 and 447). The claimant has a stable, normal gait (Ex. 17F, pgs. 178 and 361). The claimant has admitted on more than one occasion that his medications control his pain (Ex. 17F, p. 144). While the claimant testified to numbness, pain, and weakness, in his hands and arms, there is no evidence of loss of motor strength. The claimant testified that he makes dinner, does the laundry, drives, and uses the computer, all of which require a significant amount of fine and gross manipulation.[3] Accordingly, the claimant's allegation regarding the severity of his physical impairments is partially credible.

TR 16-18 (emphasis original, footnote added).

Although Plaintiff argues that the ALJ should have accorded greater weight to the opinions of Drs. Hadgu and/or Matlock, his treating physicians, than to the opinions of the state agency physicians (Docket No. 15, p. 13-16), the Regulations do not mandate that the ALJ give

---

[3] The ALJ recounted Plaintiff's testimony as follows:

At the hearing, the claimant said that he has numbness from his chest down. He said that he has pain and balance issues. The claimant said that he gets tired very easily. He said that his legs swell. The claimant testified that he uses a cane to help with his balance. He testified that he cannot stand or walk for more than 15 minutes at time before having to sit down. He said that he cannot sit for more than 45 minutes before having to get up. The claimant indicated that lying down flat helps most with his pain. The claimant testified that he makes dinner at home, but indicated that he mostly rests in his recliner. He said that he has lost the strength in his hands. He said that his arms shake when lifting a gallon of milk.

TR 16.

controlling weight to a treating physician's evaluation when that evaluation is inconsistent with other substantial evidence in the record. *See* 20 CFR § 416.927(d)(2) and 20 CFR § 404.1527(d)(2). Instead, when there is contradictory evidence, the treating physician's opinion is weighed against the contradictory evidence under the criteria listed above. *Id.* When the opinions are inconsistent with each other, the final decision regarding the weight to be given to the differing opinions lies with the Commissioner. 20 CFR § 416.927(e)(2).

As can be seen, the ALJ in the case at bar considered all of the evidence of record, including the records subsequent to the rendering of the medical opinions, and based her determination on the entirety of the medical and testimonial evidence before her. Because the ALJ considered the evidence in its entirety, including the conflicting opinion evidence, the Regulations do not mandate that the ALJ accord the opinion of either Dr. Hadgu or Dr. Matlock controlling weight. Accordingly, Plaintiff's argument fails.

**2. Mental Impairments**

Plaintiff next contends that the ALJ failed to "consider or evaluate" his mental impairments. Docket No. 15. Specifically, Plaintiff maintains:

> A state-agency psychological consultant opined that [Plaintiff] had no severe mental impairment as of September 2, 2011 (Tr. 383-395). By May 2012, however, his mental condition deteriorated to the point that he had experienced increasing thoughts of suicide over the preceding months (Tr. 900) and as a result, he was hospitalized in the VA psychiatric unit from May 7, 2012, through May 11, 2012, suffering from major depression (tr. 781-784, 905-990). In December 2012, [Plaintiff] told his social worker he felt overwhelmed at times and experienced "challenges adjusting to his new current physical condition" (Tr. 867-868). He qualified for a non-service connected VA pension (Tr. 859, 868). [Plaintiff] admitted to depression at his hearing (Tr. 35) and alluded to his anxiety at an earlier level of adjudication (Tr. 160-161). Other

17

> medical evidence referenced [Plaintiff's] depression and/or anxiety
> (Tr. 255, 277-281, 362). The ALJ did not evaluate, or even
> mention, any of this evidence.

*Id.*, p. 17.

Defendant responds that Plaintiff's contention "is without merit, as Plaintiff has established no mental impairment that warranted discussion by the ALJ." Docket No. 16, p. 3. Specifically, Defendant argues that, although Plaintiff was hospitalized for five days in May 2012 for a "single episode" of severe depression due to pain and function loss, Plaintiff has not established a mental impairment that caused functional limitations for a period of twelve months. *Id.*, *citing* TR 781-84, 905-90. Defendant additionally argues that Plaintiff applied for benefits on the basis of disability due to a spinal condition, not any mental impairment, and further failed to allege limitations related to a mental impairment when he completed his 2011 and 2012 function reports. *Id., citing* TR 140, 159-61, 177-78. Defendant contends that the ALJ is under no obligation to investigate a claim not presented at the time of the application and not offered at the hearing as a basis for disability. *Id.*, p. 4.

As an initial matter, while the ALJ has a duty to "fully and fairly develop the administrative record," the ALJ is under no duty to find a claim where none is alleged; that is, the ALJ is under no obligation to investigate a claim not asserted on the application or offered at the hearing as a basis for disability. *See, e.g., Johnson v. Secretary*, 794 F.2d 1106, 1111 (6th Cir. 1986); *Nejat v. Comm'r of Soc. Sec.*, 359 F.App'x 574, 577 (6th Cir. 2009), *citing Pena v. Chater*, 76 F.3d 906, 909 (8th Cir. 1996). Although the record in the instant action contains a single five day hospitalization due to Plaintiff's depression, as well as Plaintiff's report of "at times" feeling overwhelmed, depressed, and anxious as he adjusted to his new physical

condition, Plaintiff consistently alleged disability on the basis of a benign spinal cord tumor. TR

116-19, 120-26. Plaintiff did not allege disability based on mental impairments in either his DIB

or SSI applications, his 2011 or 2012 function reports, or at his hearing. *See, e.g.,* TR 116-19,

120-26, 140, 159-61, 177-78. Accordingly, Plaintiff's contention on this point fails.

### 3. Severe Impairments

Third, Plaintiff argues that the ALJ failed to "identify, consider, and evaluate" all of his

severe impairments. Docket No. 15. Specifically, Plaintiff asserts that the ALJ failed to identify,

consider, or evaluate the "sizeable" disc herniation at C5-C6 documented by a cervical MRI

dated October 17, 2011 (TR 589-90), and the disc herniation at T8-T9 described by Dr. Davis.

*Id.*, p. 18. Plaintiff maintains:

> The ALJ reported the October 17, 2011, thoracic MRI but
> mentioned nothing about the protrusion at T8-T9 resulting in canal
> stenosis (Tr. 17). In the same vein, she reported the results of an
> MRI performed on August 7, 2011, showing cervical spondylosis
> (Tr. 18, 749-750), but neglected to mention the one done two
> months later reflecting the "sizeable" disc herniation at C5-C6 (Tr.
> 589-590). The ALJ also failed to mention the fact that [Plaintiff]
> received a handicapped placard for his vehicle form the
> Department of Motor Vehicles (Tr. 999).
>
> These omissions suggest the ALJ cherry-picked the medical
> evidence she believed supported her conclusion and failed to
> report, discuss, or analyze evidence inconsistent with that
> conclusion. . . .

*Id.*

Defendant does not directly respond to this statement of error, but does argue that the ALJ

considered the evidence of record in its entirety, made appropriate credibility determinations, and

weighed the evidence accordingly. Docket No. 16.

At step two of the sequential evaluation process, the ALJ must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe." 20 CFR § 404.1520(c). An impairment or combination of impairments is "severe" within the meaning of the Regulations if it significantly limits a claimant's physical or mental ability to perform basic work activities; conversely, an impairment is not severe if it does not significantly limit a claimant's physical or mental ability to do basic work activities. *Id.*; 20 CFR §§ 404.1521(a), 416.920(c), 416.921(a). The Sixth Circuit has described the severity determination as a de minimis hurdle in the disability determination process, the goal of which is to screen out groundless claims. *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988); *Farris v. Sec'y of Health and Human Servs.*, 773 F.2d 85, 89 (6th Cir. 1985). Where the ALJ finds that the claimant has at least one severe impairment and proceeds to complete the sequential evaluation process, however, the ALJ's failure to find that another condition is a severe impairment cannot constitute reversible error. *See Maziarz v. Sec'y of Health and Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987).

The ALJ in the instant action found that Plaintiff had the following severe impairments: status post cervical ependymoma, cervical spondylosis, and cervical syrinx. TR 15. After explicitly finding that Plaintiff had a combination of impairments that was severe, the ALJ continued her evaluation of the evidence and completed the sequential evaluation process. *See* TR 15-20. Because the ALJ specifically found that Plaintiff had at least one severe impairment and completed the sequential evaluation process, the ALJ's failure to discuss Plaintiff's disc herniations at C5-C6 and T8-T9 and find them to be severe impairments simply cannot constitute reversible error. *See Maziarz v. Sec'y of Health and Human Servs.*, 837 F.2d 240, 244 (6th Cir.

1987).  Accordingly, Plaintiff's argument on this point fails.

## 4.  Hypothetical Questions and the Existence of a Significant Number of Jobs

Plaintiff argues that the ALJ's finding that he could perform jobs identified by the VE

was not supported by substantial evidence.  Docket No. 15.  Specifically, Plaintiff maintains that,

had the ALJ accorded proper weight to the opinion of Dr. Matlock, the ALJ would have accepted

the VE's testimony that several limitations assessed by Dr. Matlock would preclude all work.

*Id.*, p. 19.  Plaintiff further contends that the hypothetical questions posed to the VE by the ALJ

failed to include any of Plaintiff's mental limitations and all of Plaintiff's physical limitations.

*Id.*  Plaintiff maintains that, because the hypothetical questions were flawed, the ALJ could not

rely upon the VE's answers thereto.  *Id.*  Finally, Plaintiff argues that the number of jobs cited by

the ALJ "is erroneous and represents the VE's response to a hypothetical that did not incorporate

the requirement that [Plaintiff] use a cane when ambulating," despite the ALJ's finding that

Plaintiff required the use of a cane to ambulate.  *Id.*, *citing* TR 16.  Plaintiff notes that the VE

testified that twenty percent of the jobs he identified would be eliminated by the requirement that

Plaintiff use a cane when ambulating, and Plaintiff contends, therefore, that the "issue is whether

[the ALJ] would have found the reduced number represented a significant number of jobs." *Id.*,

*citing* TR 49-50.

Defendant concedes that the ALJ mistakenly failed to reduce the number of available jobs

by twenty percent, as the VE testified would be necessary when taking into account a claimant's

need to ambulate with a cane, but Defendant argues that this failure does not constitute a

sufficient basis for remand because there remains a significant number of available jobs.  Docket

No. 16, p. 15.  Defendant notes the VE's testimony that a hypothetical claimant with Plaintiff's

vocational profile and RFC could perform sedentary work as a general office clerk, information clerk, and order clerk, in positions totaling 231,000 nationally and 4,400 in the state; and also notes the VE's testimony that the need to ambulate with a cane would reduce those numbers by twenty percent, to 184,800 nationally and 3,520 in the state. Docket No. 16, p. 15-16, *citing* TR 48-50. Defendant contends that 184,800 and 3,520 constitute significant numbers of available jobs such that the ALJ's failure to reduce the number of available jobs is harmless. *Id.*

Defendant further argues that the ALJ's hypothetical questions properly accounted for Plaintiff's impairments, such that the ALJ could rely on the VE's testimony on the existence of a significant number of jobs that Plaintiff could perform. *Id.*

As explained above, the Commissioner has the burden at step five of the sequential evaluation process of establishing the claimant's ability to work by proving the existence of a significant number of jobs in the national economy that the claimant could perform, given his or her age, experience, education, and residual functional capacity. 20 C.F.R. §§ 404.1520, 416.920. *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990). The Commissioner's burden at step five can be satisfied by relying on the grid rules only if Plaintiff is not significantly limited by nonexertional impairments, such as mental limitations, manipulative limitations or environmental limitations. *Abbot v. Sullivan*, 905 F.2d 918, 926 (6th Cir. 1990). In the presence of nonexertional limitations that would preclude the application of the grid, "expert testimony would be required to satisfy the Secretary's burden of proof regarding the availability of jobs which this particular claimant can exertionally handle." *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 531 (6th Cir. 1983). In other words, the ALJ may rely on the testimony of a vocational expert in response to a hypothetical question as substantial evidence of the existence

of a significant number of jobs that the claimant is capable of performing as long as the hypothetical question accurately represents the claimant's credible limitations. *See Varley*, 820 F.2d at 779 (*quoting O'Banner v. Sec'y of Health, Ed. & Welfare*, 587 F.2d 321, 323 (6th Cir. 1978)).

Although Plaintiff asserts that the ALJ would have accepted the VE's testimony that several limitations assessed by Dr. Matlock would preclude all work if she had accorded greater weight to his opinion, as discussed above, the ALJ properly considered the opinion evidence and was not bound to accept Dr. Matlock's opined limitations. Because the ALJ was not bound to accept Dr. Matlock's opined limitations, she was not bound to accept the VE's response that those limitations would preclude all work.

Turning to the ALJ's failure to reduce the number of available jobs by twenty percent in order to account for Plaintiff's need to ambulate with a cane, this error is harmless because a twenty percent adjustment in the number of jobs the VE testified would be available still results in a significant number of available jobs (184,800 jobs available nationally and 3,520 jobs available in the state). *See, e.g., Harmon v. Apfel*, 168 F.3d 289 (6th Cir. 1999); *Hall v. Bowen*, 837 F.2d 272, 274-275 (6th Cir. 1988). Accordingly, remand is not warranted.

## IV. RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record (Docket No. 14) be DENIED, and that the decision of the Commissioner be AFFIRMED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this

Recommendation with the District Court.  Any party opposing said objections shall have fourteen

(14) days after service of any objections filed to this Report in which to file any response to said

objections.  Failure to file specific objections within fourteen (14) days of service of this Report and

Recommendation can constitute a waiver of further appeal of this Recommendation.  *See Thomas

v. Arn,* 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986);

28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72.


_____
E. CLIFTON KNOWLES
United States Magistrate Judge